UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM COOPER,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF CAMDEN, et al.,<br><br>    Defendants. | HONORABLE NOEL L. HILLMAN<br><br>1:15-cv-01244-NLH-JS<br><br>**OPINION** |

**APPEARANCES:**

WILLIAM COOPER
186629C/974700
New Jersey State Prison
P.O. BOX 861
TRENTON, NJ 08625
    Appearing *pro se*

PARKER MCKAY, P.A.
Elizabeth M. Garcia, Esq.
9000 Midlantic Drive, Suite 300
P.O. Box 5054
Mount Laurel, New Jersey 08054
    Counsel for Defendant Peter Farlow Sr.

THE VIGILANTE LAW FIRM, P.C.
Jacqueline M. Vigilante, Esq.
99 North Main Street
Mullica Hill, New Jersey 08062
    Counsel for Defendant John Vernon

THE OFFICE OF CAMDEN COUNTY COUNSEL
Anne E. Walters, Assistant County Counsel
520 Market Street, 14th Floor Camden, New Jersey 08102
    Counsel for Defendants County of Camden, Camden County Correctional Facility, Correctional Officer Nnakuru R. Chukudi, and Warden Eric M. Taylor

**HILLMAN**, District Judge

This matter concerns claims by Plaintiff, appearing *pro se*,[1] arising from an alleged physical assault by three Camden County Correctional Facility ("CCCF") corrections officers while Plaintiff was a pre-trial detainee. All Defendants have moved for summary judgment in their favor on all of Plaintiff's claims against them. Plaintiff has not opposed Defendants' motions.[2]

---

[1] Counsel for Plaintiff filed the original complaint in New Jersey state court, and after the County of Camden removed the action to this Court on February 17, 2015, Plaintiff's counsel withdrew as Plaintiff's attorney on September 22, 2015. Plaintiff's two applications for pro bono counsel were denied on October 23, 2015 and February 22, 2016. Plaintiff has remained in *pro se* status since his counsel's withdrawal, and at Plaintiff's request, discovery was extended until June 30, 2016. Plaintiff has failed to answer any of Defendants' discovery requests. Plaintiff, however, was deposed as a witness in his cellmate's suit arising from the same incident. (See Sanders v. County of Camden, 1:15-cv-01129-NLH-JS, administratively terminated on October 16, 2017 pending consummation of settlement, case closed on December 19, 2017.) Defendants have provided the transcript of Plaintiff's deposition in support of their motions for summary judgment.

[2] On September 13, 2017, the Court denied without prejudice Defendants' motions, and afforded Plaintiff 45 days to file an opposition. (Docket No. 69.) On October 19, 2017, Plaintiff filed a motion for an extension of time to file his opposition (Docket No. 70), and the Court granted his request on October 23, 2017, providing him with an additional 45 days from the date of the Order (Docket No. 72), thus making Plaintiff's opposition due on December 7, 2017. To date, Plaintiff has never filed an opposition to Defendants' motions, which were filed on January 30, 2017. Plaintiff has been in custody at his current facility since August 21, 2015, and there are no notations on the docket indicating that mail sent to Plaintiff at NJSP has been returned as undeliverable. As set forth below, Plaintiff will be

For the reasons expressed below, Defendants' motions will be granted in part and denied without prejudice in part.

## BACKGROUND

On January 26, 2013, Plaintiff, William Cooper, an African-American Muslim, was a pre-trial detainee incarcerated at CCCF in Unit Three North when the unit was placed on lockdown. Plaintiff observed from his cell a corrections officer beat another inmate who was in the shower when the lock-down was called. Plaintiff claims that he yelled out of his cell to the corrections officer, "We see what you are doing," "He is not resisting," and "We know who you are." Plaintiff claims that the officer responded, "What are you trying to do, incite a riot?"

During the early morning of January 27, 2013, Defendant corrections officer John Vernon was informed of the incident. Vernon enlisted Defendant corrections officers Peter Farlow and Nnakuru Chukudi to accompany him to Unit Three North and speak with the inmates in three cells associated with the threats arising from the earlier incident. After entering the first cell, the officers visited Plaintiff's cell, which he shared with Craig Sanders. Either before or while he opened the door

---

provided one last opportunity to respond to Defendants' motions. Fed. R. Civ. P. 56(e).

to Plaintiff's cell, Vernon shouted for the men to get up and face the wall. Sanders was on the top bunk and swung his legs out. According to Plaintiff, Vernon grabbed Sanders and threw him to the floor. Plaintiff claims that Vernon beat up Sanders while Chukudi held down Sanders's legs. Plaintiff further claims that Farlow stood in the doorway in order to block the video surveillance camera. Plaintiff relates that he witnessed the officers' interactions with Sanders through a gap in the sheet he had hanging up as a curtain covering the lower bunk.

Plaintiff claims that during Vernon's altercation with Sanders, Vernon lifted the curtain on Plaintiff's bunk, pulled him out of the bunk onto the ground, and kicked him in the back of the head, causing his face to smash on the floor. Plaintiff claims that Vernon then resumed his assault on Sanders, and commanded Plaintiff to return to his bunk, which he did.

Vernon denies kicking or otherwise interacting with Plaintiff, and believes that Plaintiff remained in his bunk during the entire incident. Chukudi and Farlow state that they did not see Vernon kick Plaintiff. Plaintiff states that neither Chukudi nor Farlow touched him during the incident. Sanders states that he did not see Vernon kick Plaintiff, and describes Plaintiff as having remained balled-up in the corner of his bunk, whimpering, and never leaving his bunk before Sanders was taken out of the cell. Sanders further states that

4

when he returned to his bunk after his medical treatment, Plaintiff told him that after Sanders left, the "officers" returned and struck him in the nose but Plaintiff did not specify which officer or officers hit him.

Plaintiff claims that he suffered a broken nose and was bruised in the incident. Plaintiff remained in his cell while Vernon removed Sanders and took him to receive medical care. Plaintiff did not seek medical attention that evening or the next day for his alleged injuries.[3] Plaintiff also did not file a grievance form about the incident.

Plaintiff has asserted numerous claims against the three officers, CCCF, and its warden, Defendant Eric Taylor for violations of the 4th, 5th, 8th, and 14th Amendments to the U.S. Constitution, as well as for assault and battery and negligence under New Jersey state law.

## DISCUSSION

### A. Subject matter jurisdiction

This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

---

[3] About a year after the incident, Plaintiff sought medical treatment for depression arising out of his arrest four years prior, as well as the incident on January 27, 2013.

**B. Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

In circumstances such as this one where a nonmoving party fails to oppose the motion, Fed. R. Civ. P. 56(e) provides that the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order.

### C. Analysis

#### 1. Plaintiff's claims against Defendants County of Camden, Camden County Correctional Facility, Chukudi, Farlow, and Warden Taylor

##### a) Individual Defendants

In order for Plaintiff to succeed on a claim against any particular defendant, he must provide evidence showing how each

7

particular defendant acted to violate his civil rights.  Mere status as an employer or supervisor without more is insufficient for liability.  See <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."); <u>Parkell v. Danberg</u>, 833 F.3d 313, 330 (3d Cir. 2016) (citations omitted) ("[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."); <u>Leang v. Jersey City Bd. of Educ.</u>, 969 A.2d 1097, 1117 (N.J. 2009) (citations omitted) (explaining that a person is subject to liability for the common law tort of assault if he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

a person is liable for the tort of battery if the plaintiff shows a nonconsensual touching by the defendant); Townsend v. Pierre, 110 A.3d 52, 61 (N.J. 2015) (quotations and citations omitted) (explaining that to sustain a cause of action for negligence, a plaintiff must establish four elements - (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages - and the plaintiff bears the burden of establishing those elements by some competent proof).

As a primary matter, Plaintiff cannot maintain any claims against CCCF because New Jersey correctional facilities, and CCCF specifically, are not amenable to suit under § 1983. See Turner v. Camden Cty. Corr. Facility, 2017 WL 88976, at *1 (D.N.J. Jan. 10, 2017); Grabow v. Southern State Corr. Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989).

With regard to the County of Camden and Warden Taylor, there is no evidence in the record to show that they acted in any manner that caused Plaintiff's alleged injuries on January 27, 2013. Plaintiff has not pointed to a policy, practice or custom which directly caused his constitutional harm, and he has not shown how Warden Taylor participated in violating Plaintiff's rights, directed others to violate them, or had knowledge of and acquiesced in his subordinates' alleged violations. Thus, CCCF, the County of Camden, and Warden Taylor are entitled to summary judgment on all of Plaintiff's claims

9

against them.

Similarly, the record does not support Plaintiff's claims against Chukudi and Farlow. Plaintiff himself admits that they did not strike him. The evidence also does not reveal that they acted in a way to show they intended to cause harmful contact with Plaintiff, or that they proximately caused his alleged injuries. The lack of personal involvement by Chukudi and Farlow in Plaintiff's alleged injuries is fatal to all of his claims against them. Accordingly, Chukudi and Farlow are entitled to summary judgment in their favor as well.[4]

### 2. Plaintiff's claims against Defendant Vernon

Plaintiff claims that during Vernon's altercation with Sanders, Vernon lifted the curtain on Plaintiff's bunk, pulled him out of the bunk onto the ground, and kicked him in the back of the head, causing his face to smash onto the floor. Plaintiff claims that Vernon then resumed his assault on Sanders, and commanded the Plaintiff return to his bunk, which he did.

---

[4] To the extent that Plaintiff has asserted a claim for failure to intervene against Chukudi and Farlow, such a claim also fails because of a failure to articulate how Chukudi and Farlow could have intervened to prevent the alleged strike by Vernon. See Bistrian v. Levi, 696 F.3d 352, 371 (3d Cir. 2012) ("[A] corrections officer who fails to intervene when other officers are beating an inmate may be liable on a failure-to-protect claim if the officer had a realistic and reasonable opportunity to intervene and simply refused to do so.").

10

None of the evidence in the record thus far supports Plaintiff's account of what occurred as alleged in the Complaint. Vernon denies kicking or otherwise interacting with Plaintiff, and he believes that Plaintiff remained in his bunk during the entire incident. Chukudi and Farlow state that they did not see Vernon kick Plaintiff. However, the testimony of Vernon, Chukudi and Farlow, standing alone, would not warrant summary judgment in Vernon's favor, if that testimony is countered by contrary evidence in the record. In such a case it would be for a jury and not the Court to assess the credibility of Plaintiff's and the officers' testimony to determine which version of events is to be believed.[5] See Marino v. Industrial

---

[5] The Court notes that for Plaintiff's claims against the individual defendants acting in their personal capacity, the qualified immunity doctrine governs the analysis. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658 (2012). In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009). Even though the determination of whether an officer acted objectively reasonably or made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge should not decide the objective reasonableness issue until all the material historical facts are no longer in dispute. Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007). To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury to

11

Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255) (explaining that in considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor").

The other undisputed – and if deemed admitted – facts in the record, when considered in combination with the three officers' testimony, support summary judgment in Vernon's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Plaintiff's bunk mate, Sanders, testified in his own lawsuit against Vernon that he did not see Vernon kick Plaintiff. Sanders also testified that he believed that Plaintiff remained balled-up in the corner of his bunk, whimpering, and never left his bed before Sanders was taken out of the cell. This testimony supports all three officers' statements that Plaintiff remained in his bunk during the entire altercation between Vernon and Sanders, and it also supports that Vernon did not

---

resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." Id. In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, ... but responsibility for answering that ultimate question remains with the court." Id.

pause in his assault on Sanders in order to pull Cooper off his bed, kick him, and send him back to his bunk.

Further discrediting Plaintiff's allegations against Vernon is Sanders' testimony that Plaintiff told him that after Sanders left, the "officers" returned and struck him in the nose, but he did not specify which officer or officers hit him. Also casting doubt on Plaintiff's claims against Vernon is his lack of medical documentation to demonstrate that he was injured in the way he claims.

In sum, all of the evidence in the record, which Plaintiff has thus far failed to deny, refutes Plaintiff's claims that Vernon kicked him in the manner alleged by Plaintiff. To be clear, the Court does not find as fact that Vernon did not strike Plaintiff, as such a finding would be an improper function of this Court at the summary judgment stage. Rather, the Court finds that: (1) Plaintiff has filed to identify specific facts and affirmative evidence that contradict those offered by Vernon, Anderson, 477 U.S. at 256-57, and (2) if this evidence is deemed unrefuted no genuine issue of material fact remains and Vernon would be entitled to a judgment as a matter of law, see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

While the Court believes that ruling in favor of Vernon now would be consistent with the undisputed evidence currently in

the record and procedurally within the scope of both the letter and spirit of Rule 56 we will proceed with caution. The Court believes, on the record as whole, that Plaintiff should be given one last chance to respond under circumstances that make it clear the danger of failing to do so. The Court chooses this path which Rule 56 allows, Fed. R. Civ. P. 56(e)(4), for several reasons.

First, Plaintiff previously sought additional time to respond. Second, the Court is aware that in the parallel Sanders case the Court denied Vernon's motion for summary judgment, relying in large part on the testimony of Cooper. (Civil Action 15-1129, Docket No. 99 at 3-6, 21-23.) Moreover, in Sanders' case and in this case, even though Vernon denies he did anything wrong in his interactions with Sanders, and denies that he struck Plaintiff, it is an undisputed fact that during the Internal Affairs investigation, Vernon accepted a plea deal of a demotion to sergeant and a three-month active suspension and a three-month on-the-record suspension. (Docket No. 61-8 at 13; (Civil Action 15-1129, Docket No. 79-12 at 13-14.) Both of these facts suggest that officer misconduct of some kind by Vernon occurred while Plaintiff was present in their joint cell. Third, Plaintiff testified under oath in the related case consistent with the allegations of his Complaint. And fourth, the Court's previous Order granting Plaintiff leave to respond

out of time did not expressly notify Plaintiff that the Court could consider Vernon's assertion of undisputed facts as true if Plaintiff did not respond to them in this case.

**CONCLUSION**

For the reasons expressed above, all Defendants except Vernon are entitled to summary judgment in their favor on the present record on Plaintiff's claims against them.  The Court will provide Plaintiff one last opportunity to properly file opposition to Vernon's motion for summary judgment.  Fed. R. Civ. P. 56(e)(1).  Plaintiff is on notice that if he fails to do so the Court will consider the facts as asserted by Vernon to be undisputed for purposes of summary judgment and rule accordingly.  Fed. R. Civ. P. 56(e)(2) and (3).  An appropriate Order will be entered.


Date: May 11, 2018                     s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.